THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

C. DONALD WHEATLEY and
FREDERICK G. LEVIN,

                Plaintiffs,

     v.

THE GUARDIAN LIFE INSURANCE
COMPANY OF AMERICA, et al.,

                Defendants.

HON. JEROME B. SIMANDLE

Civil Action
No. 06-5228 (JBS)

**OPINION**

APPEARANCES:

Andrew M. Smith, Esq.
1415 Route 70 East; Suite 200
Cherry Hill, NJ 08034
    Attorney for the Plaintiffs C. Donald Wheatley and Frederick
    G. Levin

Ryan J. Fleming, Esq.
FOX ROTHSCHILD LLP
2000 Market Street, 10th Floor
Philadelphia, PA 19103-3291
    Attorney for the Defendants Guardian Life Insurance Company
    of America, Guardian Insurance & Annuity Company, Inc., and
    Daniel J. Linehan

SIMANDLE, District Judge:

    This case comes before the Court on the Defendants' motion

for summary judgment [Docket Item No. 4] and Plaintiffs' motion

for continuance under Federal Rule of Civil Procedure 56(f).

[Docket Item No. 7.]  The Court has reviewed the parties'

submissions and for the reasons explained below, shall find that

summary judgment is premature with regard to Plaintiffs' breach of contract claim (Count One), and Defendants' motion will be denied without prejudice with respect thereto pending further discovery, and that summary judgment will be granted to Defendants with regard to Plaintiffs' claims for unreasonable restraint of trade (Count Two), constructive discharge (Count Three), concert of action (Count Four), and age discrimination (Counts Five to Seven), for the reasons explained below.

I.   **BACKGROUND**

A. **Facts**

Plaintiffs C. Donald Wheatley and Frederick G. Levin ("Plaintiffs") are field representatives of Defendants Guardian Life Insurance Company of America and the Guardian Insurance & Annuity Company, Inc. (collectively "Guardian"). (Complaint at ¶ 13.)  Plaintiffs were initially assigned to the offices of Career Development Manager Sid Friedman in Philadelphia, where they received approximately 70% of the commissions earned on sales of financial/investment products ("investment commissions") and 55% of the commissions earned on the sale of life insurance products ("insurance commissions"). (Id. at ¶ 14.)  Additionally, Plaintiffs received 30 to 35% of the life insurance premium commissions as expense reimbursement. (Id.)

2

In or around January 2006, Plaintiffs were given the option to relocate to the offices of another Career Development Manager. (Id. at ¶ 16.)  Plaintiffs elected to work out of the Marlton, New Jersey office.  (Id. at ¶¶ 16-17.)

On or about October 4, 2006, Plaintiffs received a correspondence from Dennis Kelleher, the Vice President and Regional Sales Director for Defendant Guardian, informing them that effective October 31, 2006, the Marlton office would be closed.  (Id. at ¶ 18.)  The correspondence from Mr. Kelleher stated that in order to remain a Guardian Field Representative, Plaintiffs must affiliate with the Philadelphia 1R Agency in Blue Bell, Pennsylvania (the "Blue Bell Agency"), managed by Defendant Daniel J. Linehan.  (Id.)  Plaintiffs were informed that, if Plaintiffs did not report to Blue Bell Agency on November 1, 2006 their Field Representative contracts would terminate.  (Id.)

Plaintiffs claim that such demands were inconsistent with Plaintiffs' interpretation of the Field Representative agreement and in conflict with Defendants' previous actions.  (Id. at ¶¶ 20-21.)  Specifically, in the past, Defendants have permitted Field Representatives to choose from roughly three agencies with whom they could affiliate (id. at ¶ 21), and they would be permitted to switch agencies for any reasons (id. at ¶ 24). According to Plaintiffs, Defendants' correspondence in effect

3

ordered Plaintiffs to relocate to an inconvenient office location[1] or suffer loss of all of their income and renewal commissions,[2] as well as relinquishment of seven years worth of client lists, customers and goodwill.  (Id. at ¶¶ 29, 32.) Moreover, Plaintiffs would no longer receive the 35% insurance product expense reimbursement and would receive no greater than 50% of their investment commissions versus the 70% they previously received.  (Id. at ¶ 30.)  Defendants refused to release Plaintiffs from the Blue Bell Agency assignment.  (Id. at ¶ 31.)

B. **Procedural History**

Plaintiffs filed their Complaint on October 31, 2006 alleging breach of contract, restriction of trade, constructive discharge, concert of action, and age discrimination.  On January 16, 2007,  before the parties engaged in any discovery, Defendants filed a motion for summary judgment [Docket Item No. 4].  In opposition, Plaintiffs filed a Rule 56(f) motion, requesting a continuance.  Defendants timely replied.  The Court

---

[1]  The new office is located at least one hour from the Marlton office.  (Pls.' Compl. at ¶ 29.)

[2]  Including any potential commissions that would have fully vested in 2009, resulting in a continuing receipt of renewal-based commissions to the Field Representative or his family upon retirement or death.  (Pls.' Compl. at ¶ 25.)

4

has considered all of these submissions without oral argument, pursuant to Fed. R. Civ. P. 78.

## II.   **STANDARD OF REVIEW**

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id.

In deciding whether there is a disputed issue of material fact, a court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of

5

fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 329-30 (3d Cir. 1995).  The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party would have the burden of persuasion at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Country Floors v. P'ship of Gepner and Ford, 930 F.2d 1056, 1061-63 (3d Cir. 1991).

III. **DISCUSSION**

The Court will first address Plaintiffs' Rule 56(f) affidavit for continuance, which argues that, because this Court has not conducted a Rule 16 scheduling conference and has not set discovery deadlines, summary judgment is premature.  (Pls.' Rule 56(f) Aff. at ¶ 4.)  Plaintiffs contended that they could not "adequately present facts and testimony to contradict Defendants' Motion for Summary Judgment without discovery."  (Id. at ¶ 3.)

Rule 56 does not require that discovery take place in all cases before summary judgment can be granted.  See Fed. R. Civ. P. 56(a) ("A party seeking to recover upon a claim . . . may, at any time after the expiration of 20 days from the commencement of the action . . . move . . . for a summary judgment.")(Emphasis added).  Moreover, "the fact that discovery is not complete --

6

indeed has not begun -- need not defeat [a motion for summary judgment]." Am. Nurses' Ass'n. v. Illinois, 783 F.2d 716, 729 (7th Cir. 1986).  Under Rule 56(f), however, a party may oppose a motion for summary judgment by submitting an affidavit that sets forth good reasons why the party cannot submit an affidavit justifying the party's position in opposition to the motion.[3] See Robert E. Bartkus, N.J. Federal Civil Procedure ¶ 8-12:4 at 212-13 (1999).  The decision to grant a Rule 56(f) motion lies in the sole discretion of the district court.  See San Filippo v. Bongiovanni, 30 F.3d 424, 432 (3d Cir. 1994); see also Koplov v. Ford Motor Co., 795 F.2d 15, 18 (3d Cir. 1986)("[D]istrict judge's refusal to postpone consideration of defendant's summary judgment motion was well within the range of permissible discretion.")

_____

[3]  Specifically, Rule 56(f) provides in pertinent part that:

> Should it appear from the affidavits of a
> party opposing the motion that the party
> cannot for reasons stated present by
> affidavit facts essential to justify the
> party's opposition, the court may refuse the
> application for judgment or may order a
> continuance to permit affidavits to be
> obtained or depositions to be taken or
> discovery to be had or may make such other
> order as is just.

Fed. R. Civ. P. 56(f).

Upon review of a Rule 56(f) affidavit, the court may refuse to entertain the pending summary judgment motion or may order a continuance to permit additional discovery.  "[W]here the facts are in possession of the moving party a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course." Miller v. Beneficial Mgmt. Corp., 977 F.2d 834, 846 (3d Cir. 1992); Doe v. Abington Friends Sch., 480 F.3d 252, 257 (3d Cir. 2007).  However, in deciding whether to grant a Rule 56(f) motion, the Third Circuit has consistently "underscored the benefits of technical compliance" with Rule 56(f). St. Surin v. Virgin Islands Daily News, Inc., 21 F.3d 1309, 1313-14 (3d Cir. 1994).  In particular, the Third Circuit has stressed the requirement that the party opposing the motion actually file an affidavit "identifying their inability to effectively oppose the summary judgment motion." Lunderstadt v. Colafella, 885 F.2d 66, 70 (3d Cir. 1989).  More importantly, the Court must consider "what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not been previously obtained." San Filippo v. Bongiovanni, 30 F.3d at 432; see also Bradley v. United States, 299 F.3d 197, 206 (3d Cir. 2002).

Courts within the Third Circuit have denied Rule 56(f) applications at least in part because the movant has failed to

8

show how the particular information, if obtained, would preclude summary judgment.  See Scott v. Graphic Comm. Int'l Union, Local 97-B, 92 F. App'x 896 (3d Cir. 2004) (affirming lower court's grant of summary judgment because the non-movant "provides no information as to the particular information sought, how it would preclude summary judgment . . . ."); Siss v. County of Passaic, 75 F. Supp. 2d 325, 334 (D.N.J. 1999); In re Northwestern Mut. Life Ins. Co. Sales Practice Litigation, 70 F. Supp. 2d 466, 483 (D.N.J. 1999); DeJoy v. Comcast Cable Comm. Inc., 968 F. Supp. 963, 995 (D.N.J. 1997).

        In the case at bar, counsel for Plaintiffs submits a Rule 56(f) affidavit stating that "no discovery has been exchanged between Plaintiffs and Defendants." (Pls.' Aff. at ¶ 6.) Indeed, Plaintiffs stated that they have not yet had the opportunity to propound discovery requests on Defendants, take depositions, or receive initial disclosure materials required under Rule 26. (Id.) In their Rule 56(f) affidavit, Plaintiffs highlight three areas where the lack of discovery allegedly prevents them from fully responding to Defendants' motions. First, Plaintiffs seek "statistical data detailing the movement of Field Representatives in and around the time of Plaintiffs' transfer." (Pls.' Aff. at ¶ 7.) Second, Plaintiffs intend to "fully investigate the manner in which Defendant Guardian has

administered the establishment of Defendant Linehan's Blue Bell
Agency, to prove it has varied from the methods and practices
commonly used by Defendant Guardian to create these agencies."
(Id.)  Third, Plaintiffs seek to verify that the Agency for which
Plaintiffs previously worked out of and which Defendants have
alleged was closed has been reopened.  (Id.)  These inquiries are
geared toward establishing the facts surrounding Plaintiffs'
allegations of "favoritism and other improprieties between
Defendant Linehan and Defendant Guardian Life's through the
actions of its CEO Manning."  (Id.)

        In opposition to Plaintiffs' arguments, Defendants contend
that Plaintiffs have not met their burden of showing why summary
judgment is premature.  (Defs.' Reply Brief at 1-2.)
Specifically, Defendants argue that Plaintiffs fail to identify
what "specific information the Plaintiffs believe they need and
how, if they were to obtain it, [such information] would preclude
summary judgment on the grounds set forth in the motion."  (Id.)
Defendants argue that "statistical data detailing the movement of
Field Representative[s]" would do nothing to establish
Plaintiffs' contractual right because "usage and customs . . .
cannot be proved to alter or contradict contract terms free of
ambiguity."  (Id. at 9.)  Defendants contend that the Field
Representative agreement is clear in establishing that a Field

10

Representative is not free to choose his agency affiliation.
(Id.; Defs.' Br. at 25.)  Moreover, Defendants argue that the
Complaint did not allege that the Field Representative agreement
limits or provides Field Representatives with rights that would
affect "the manner in which Defendant Guardian . . .
administer[s] the establishment of Defendant Linehan's Blue Bell
agency" or the reopening of Defendants' old agency.  (Id. at 10.)
Defendants further argue Plaintiffs fail to specify how the
information they seek would preclude summary judgment with regard
to Plaintiffs' age discrimination claims (Counts Five to Seven)
(Defs' Rep. Br. at 7) or antitrust claim (Count Two) (Defs' Rep.
Br. at 8).

    The Court will grant Plaintiffs' Rule 56(f) application, and
dismiss Defendants' summary judgment motion pending further
discovery only as to Count One (breach of contract), as explained
in Part III.A, below.  The Court will deny Plaintiffs' request
for a continuance under Rule 56(f) with respect to all remaining
claims because, as explained in Sections III.B, C, and D, the
Court finds that Plaintiffs failed to explain how the specific
information they requested (and upon which their Rule 56(f)
Affidavit relies), if obtained, would preclude summary judgment
as to Counts Two through Seven as a matter of law.

A. **The Breach of Contract Claim (Count One)**

Under New York law[4], a written agreement that is "complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." Greenfield v. Philles Records, Inc., 780 N.E.2d 166, 170 (N.Y. 2002); see also Crainbow v. Swisher, 527 N.E.2d 258, 259 (N.Y. 1988) ("Where . . . the contract is clear and unambiguous on its face, the intent of the parties must be gleaned from within the four corners of the instrument, and not from extrinsic evidence.")

But "if the court finds that the terms, or the inferences readily drawn from the terms, are ambiguous, then the court may accept any available extrinsic evidence to ascertain the meaning intended by the parties during the formation of the contract." British Int'l Ins. Co. V. Seguros LA Republica, S.A., 342 F.3d 78, 82 (2d Cir. 2003).

A contract is ambiguous if its terms are "susceptible to more than one reasonable interpretation." Evans v. Famous Music Corp., 807 N.E.2d 869, 872 (N.Y. 2004). A party seeking to introduce industry custom and practice beneficial to its

---

[4]   The Defendants raise a possible choice of law issue. However, because the Field Representative agreement, signed by both parties, specifically provides for application of New York law and no party challenges that this agreement is valid and enforceable, this Court will follow New York law in resolving Plaintiffs' breach of contract claim.

interests bears the burden of proof.  Putnam Rolling Ladder Co.
V. Mfrs. Hanover Trust Co., 546 N.E.2d 904, 908 (N.Y. 1989).

"Under New York law, . . . custom and usage evidence must
establish that the omitted term is 'fixed and invariable' in the
industry in question."  Hutner v. Greene, 734 F.2d 896, 900 (2d
Cir. 1984) (quoting Belasco Theatre Corp. v. Jelin Prods., Inc.,
59 N.Y.S.2d 42, 45 (N.Y. App. Div. 1945)).  Moreover, the
advocate of the trade usage must establish either that the party
sought to be bound was aware of the custom, or that the custom's
existence was "so notorious" that it should have been aware of
it.  Reuters Ltd. v. Dow Jones Telerate, Inc., 662 N.Y.S. 2d 450,
454 (N.Y. App. Div. 1997).  The trade usage must be "so well
settled, so uniformly acted upon, and so long continued as to
raise a fair presumption that it was known to both contracting
parties and that they contracted in reference thereto."  Id.

Here, the disputed language reads as follows:

> The Field Representative shall be free to exercise his
> judgment as to the time and place of solicitation
> within territory of persons acceptable to the Company,
> and as to the general conduct of his business, but he
> shall comply with and be bound by rules of the Company
> now in force or as they hereafter may be amended or
> supplemented; such rules, however are not to interfere
> with such freedom of action of the Field
> Representative.

(Defs.' Rep. Br. at Ex. A.)  The Complaint alleges that
Defendants breached this provision by "refusing to provide

Plaintiffs with multiple agents from which they could choose to relocate and intentionally interfered with Plaintiffs freedom by prohibiting them from affiliating with any general agent other then [sic] Defendant Linehan of the Philadelphia 1R Agency, in Blue Bell."  (Complaint at ¶ 37.)

Defendants argue that the "freedom of action" referred to in the paragraph does not encompass the right to choose an agency. Instead, Defendants argue that the general term "freedom of action" should yield to the more specific reference to agency assignment in the Field Representative Agreement which reads: "Agency to which the [Field Representative] is assigned, but not exclusively."  (Defs.' Rep. Br. at Ex. A).  Defendants argue that this language implies that the ability to choose an agency has never been a part of Field Representative's contractual right; this agency assignment is rather, "assigned" by Defendants. (Defs.' Br. at 26-27.)  The Court disagrees.  This reference to "[a]gency to which the Field Representative is assigned, but not exclusively," is part of the definition of "Territory," and it says nothing about how an assignment comes about and how it is changed.  Nor does this clause illuminate a key allegation of the Plaintiffs' right to receive undiminished compensation in the event of reassignment.  There is, to be sure, a tension between the term "freedom of action" and the Defendants' interpretation

14

of that phrase, which is largely unaided by reference to other contractual terms.

The Court finds that the term "freedom of action" is therefore ambiguous and the Court is obligated to look to the intent of the parties to determine whether the term encompasses Field Representative's right to choose an agency and to receive undiminished remuneration.

It is clear to the Court that discovery from Defendants regarding the customs and practices of Defendant are necessary before the contractual terms can be interpreted.  Such discovery logically includes each of the areas identified by Plaintiffs, which the Court finds to be relevant.  (In the absence of specific discovery requests, the Court does not pre-determine whether the evidence sought is privileged or protected, unduly burdensome, or the like.)  Such discovery will also shed light on the actual practices in the local area for both assignment/re-assignment and choice of agency as part of Plaintiffs' contractual "freedom of action."

Moreover, as the parties seeking to introduce industry practice beneficial to their interests, <u>Putnam Rolling Ladder Co.</u>, 546 N.E. 2d at 908, Plaintiffs will need this discovery to attempt to carry their burden of proving the existence of a long-continuing, uniform, and well-settled trade usage that is known

15

to both contracting parties or referenced as such in the contractual agreement, see Reuters Ltd., 662 N.Y.S. 2d at 454. This sort of evidence lies in the hands of Defendants, and Plaintiffs have sustained their Rule 56(f) burden as to their contract claim.

Defendants' motion for summary judgment on Count One will be dismissed as premature, pending further discovery.

**B. Age Discrimination (Counts Five to Seven)**

Additionally, Plaintiffs claim age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634 (1991).  (Compl. at ¶¶ 13-14.)  Generally, administrative remedies must be exhausted before filing suit.  See McKart v. United States, 395 U.S. 185, 194 (1969).  With regard to ADEA claims, 29 U.S.C. § 626(d) states that "[n]o civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission."  29 U.S.C. § 626(d) (1991).  "In order for an aggrieved individual to bring suit under the ADEA, he or she must first file a charge with the EEOC and then wait at least 60 days."  Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 27 (1991).  Here, Plaintiffs cannot avail themselves of judicial remedies under ADEA because the

Complaint did not allege that they have filed an EEOC charge, nor have Defendants received such a charge.  (Kelleher Aff. ¶ 13.)

Defendants also seek summary judgment of Plaintiffs' ADEA claims against Mr. Linehan on the basis that there is no individual liability under the ADEA.  (Defs' Br. at 18 n. 12) The Court agrees.  First, the operative text of the statute, 29 U.S.C. § 623(a), provides:  "It shall be unlawful for an employer" to discriminate in employment of an individual due to an individual's age.  Linahan is not Plaintiffs' "employer" and is thus not a proper ADEA defendant.  Nor can Plaintiffs be regarded as "employees" of Linehan, since the term "employee" means "an individual employed by any employer,"  29 U.S.C. § 630(f).  Although the Third Circuit has not expressly addressed the issue of individual liability under the ADEA, at least four other circuit courts and courts in the District of New Jersey have held that there is no individual liability under ADEA.[5]  See Wathen v. General Elec. Co., 115 F.3d 400, 405 (6th Cir. 1997);

---

[5]  "Individual liability" refers to the liability of individuals who do not otherwise meet the statutory definition of "employer." The ADEA defines "employer" to be "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current preceding calendar year." 29 U.S.C. § 630(b) (1990).

Smith v. Lomax, 45 F.3d 402, 403-04 & n. 4 (11th Cir. 1995);
Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 510 (4th Cir.
1994), cert. denied, 513 U.S. 1058 (1994); Miller v. Maxwell's
Int'l Corp., 991 F.2d 583, 587-88 (9th Cir. 1993), cert. denied,
10 U.S. 1109 (1993); Kohn v. AT&T Corp., 58 F. Supp. 2d 393
(D.N.J. 1999).

 Moreover, the Third Circuit and other Courts of Appeals have
interpreted the Americans with Disabilities Act and Title VII as
prohibiting individual liability.  See, e.g., Sheridan v. E.I.
duPont de Nemours and Co., 100 F.3d 1061, 1078 (3d Cir. 1996) (en
banc) (no individual liability under Title VII); Tomka v. Seiler
Corp., 66 F.3d 1295, 1313 (2d Cir. 1995) (holding no individual
liability under Title VII); Gary v. Long, 59 F.3d 1391, 1399
(D.C. Cir. 1995) (same); Grant v. Lone Star Co., 21 F.3d 649, 653
(5th Cir. 1994) (same).  The fact that those courts, like the
Third Circuit, routinely apply case law under the ADEA, ADA and
Title VII interchangeably, see Walton v. Mental Health Ass'n of
S. Pa., 168 F.3d 661, 666 (3d Cir. 1999), further supports the
Court's determination here.

 Because the Plaintiffs did not allege that they have filed
an EEOC charge, nor have Defendants received such a charge, their
ADEA claims are barred.  Furthermore, because ADEA does not
provide for individual liability, Plaintiffs' claim against

Defendant Linehan fails as a matter of law.  Plaintiffs cannot need discovery to establish that they in fact presented an administrative ADEA claim, or to answer the legal question of whether the ADEA provides for individual liability.  Nothing in Plaintiffs' Rule 56(f) affidavit would preclude summary judgment on these claims.  Accordingly, Defendants are entitled to summary judgment on ADEA claims (Counts Five to Seven).

### C. **Restriction of Trade and Intent to Create Monopoly (Count Two) and Concert of Action (Count Four)**

Additionally, the Complaint alleges that Defendants' actions "have the effect of restricting the freedom of trade and freedom to conduct [] business . . . in violation of the laws of the United States" and that Defendants' conduct is "reasonably calculated to create a monopoly" so that Defendant Linehan can control trade, sales, and commissions within the Philadelphia area (Count Two).  (Compl. at ¶¶ 39-40.)  The Complaint also alleges that Defendants acted "in collusion . . . to ensure Linehan's financial security . . . [by endorsing] Defendant Linehan's refusal to allow any field representative, including Plaintiffs from relocating to another general agency of his choosing."  (Count Four) (Compl. at ¶ 50.)

Although Plaintiffs do not specifically invoke the Sherman Act, Defendants argue that the antitrust laws are the "only laws

19

of the United States which could apply to such a claim." (Defs.' Br. at 18 n. 13.)  The Court agrees and would analyze Plaintiffs' claims utilizing the framework of Sherman Act.

Section 1 the Sherman Antitrust Act prohibits "[e]very contract, combination ..., or conspiracy in restraint of trade or [interstate] commerce."  15 U.S.C. § 1 (2004).  To establish a Section 1 claim, the claimant must establish concerted action and unreasonable restraint of trade.  Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 213 (3d Cir. 1992), cert. denied, 507 U.S. 921 (1993).

### 1. Concerted Action (Count Four)[6]

To prove concerted action, the claimant must show proof of a "conscious commitment to a common scheme designed to achieve an unlawful objective."  Columbia Metal Culvert Co. v. Kaiser Aluminum & Chem. Corp., 579 F.2d 20, 33 (3d Cir. 1978), cert. denied, 439 U.S. 876 (1978).  If the evidence presented on summary judgment is equally consistent with legal and illegal conduct, the inference of an antitrust conspiracy is not supported.  See Matsushita Elec. Indus. Co. v. Zenith Radio

---

[6]  The Complaint does not frame the "concert of action" claim within the framework of the antitrust claim.  Because the Complaint does not state any legal basis and the Court can find no independent cause of action for this claim, the Court will analyze this claim as a component of Section 1 of the Sherman Act.

<u>Corp.</u>, 475 U.S. 574, 588 (1986).  However, if a rational fact finder could find that Defendants Guardian and Linehan shared a common objective to restrain competition and took action calculated to achieve that objective, despite differing motives, the Court must deny Defendants' motion for summary judgment.  <u>See</u> <u>Fineman</u>, 980 F.2d at 212.  The Third Circuit has held that "the prerequisites of a conspiracy under [§] 1 are fulfilled by the presence of two or more legally distinct corporations."  Further, "§ 1 liability plainly exclude from unlawful combinations or conspiracies the activities of a single firm," <u>Copperweld Corp.</u> <u>v. Indep. Tube Corp.</u>, 467 U.S. 752, 769 n.15 (1984), because employees of a firm are "not separate economic actors pursuing economic interests."  <u>Id.</u> at 769.

Here, it is clear that Plaintiffs' alleged conspiracy is confined within a single firm.  At the time of the events at issue, Defendant Linehan was still a manager employed by Guardian.  (Kelleher Aff. ¶¶ 3, 12).  Because "§ 1 liability plainly exclude from unlawful combinations or conspiracies the activities of a single firm," <u>Copperweld</u>, 467 U.S. at 769 n.15, and nothing in Plaintiffs' Rule 56(f) affidavit would preclude summary judgment on this issue, the Court will grant Defendants' motion for summary judgment on the concert of action claim (Count Four).

2. <u>Unreasonable Restraint of Trade (Count Two)</u>

To establish an unreasonable restraint of trade, Plaintiffs must demonstrate that the alleged conduct produced anti-competitive effects within the relevant product and geographic markets.  <u>Tunis Bros. Co. v. Ford Motor Co.</u>, 952 F.2d 715, 722 (3d Cir. 1991), <u>cert. denied</u>, 505 U.S. 1221 (1992).  The burden to establish the relevant markets is on the Plaintiffs.  <u>Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.</u>, 382 U.S. 172, 177-78 (1965); <u>Tunis</u>, 952 F.2d at 724.  The relevant product market is defined as those "commodities reasonably interchangeable by consumers for the same purposes." <u>United States v. E.I. du Pont de Nemours & Co.</u>, 351 U.S. 377, 395 (1956).

Plaintiffs appear to argue that the relevant product market includes only the sale of Guardian products[7] rather than insurance generally.  This characterization of the relevant product market is overly restrictive and therefore, unpersuasive.

---

[7]   The Complaint alleges that "Defendants' conduct is intentionally and reasonably calculated to "create a monopoly for the Philadelphia agency of Defendant Linehan, through which Defendant Linehan can control trade, sales and commissions with[in] the Philadelphia area."  (Pls.' Compl. at ¶ 40.)  Since Defendant Linehan is a Guardian manager and sells only Guardian policy, the only product market that could have been affected by Defendants' alleged anti-competitive behavior is the sale of Guardian insurance products.

The sale of Guardian's investment and insurance products takes place in the larger competitive environment for consumers desiring to purchase or invest in these commodities.  Since Guardian itself does not occupy monopoly status for such commodities, there cannot be a "restraint of trade" where only Guardian is involved.

Plaintiffs hence failed, for the purpose of their antitrust claim, to raise genuine issue of material fact with regard to Defendants' anti-competitive behavior within the insurance market generally.  Nothing in the Plaintiffs' Rule 56(f) affidavit would cure this defect or preclude summary judgment on this issue.  As a matter of law, a firm cannot conspire with itself.  The Court will therefore grant Defendants summary judgment on the restriction of trade claim (Count Two).

### D. <u>Constructive Discharge (Count Three)</u>

Finally, the Court will discuss Plaintiffs' constructive discharge claim.

"Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes."  <u>Pa. State Police v. Suders</u>, 542 U.S. 129, 141 (2004) (discussing constructive discharge in the context of a Title VII sexual harassment suit).  "The inquiry is objective: Did working

conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?"  Id.; but see Connors v. Chrysler Fin. Corp., 160 F.3d 971, 976 (3d Cir. 1998) (citing Gray v. York Newspapers, Inc., 957 F.2d 1070, 1083 (3d Cir. 1992)) (observing that a stress-free employment environment is not ensured and "discrimination laws 'cannot be transformed into a palliative for every workplace grievance, real or imagined, by the simple expedient of quitting.'")

Here, the Complaint does not allege any Title VII or other statutory violations in connection with Plaintiffs' constructive discharge claims.  Plaintiffs claim that Defendants placed "unreasonable and improper restrictions on Plaintiffs' business and have purposefully and unilaterally increased Plaintiffs' commute which has an adverse effect on Plaintiffs' health, well-being and financial compensation."  (Compl. ¶ 45.)  Plaintiffs further allege that Defendants' actions "were purposefully implemented to cause Plaintiffs to resign so Defendants could obtain Plaintiffs['] client lists, customer base and renewal commissions[;] all while preventing Plaintiffs' [sic] from vesting."  (Id. at ¶ 46.)

Attached to Defendants' brief in support of motion for summary judgment is the affidavit from Mr. Dennis Kelleher, the Vice-President and Regional Sales Director for Defendant

24

Guardian, mentioned above.  In his affidavit, Mr. Kelleher states
that Plaintiffs are allowed to work from any location, the only
exception being the office of a manager or General Agency other
than their own.  (Kelleher Aff. ¶ 11.)  Furthermore, upon leaving
Guardian, Plaintiffs are permitted to retain for personal use
customer lists and client contact information.  (Kelleher Aff. ¶
6.)  Moreover, pursuant to company policy, Mr. Linehan would not
receive any renewal commissions on policies owned by Plaintiffs'
customers.  (Id.)  The only restriction placed on Field
Representative after the termination of his agreement is that for
one year he may not attempt to induce a Guardian policy holder to
cancel an effective policy or annuity.  (Id.)  This also appears
to be consistent with Plaintiffs' Field Representative Agreement,
supra.

     Here, the Defendants have introduced evidence that
undermines Plaintiffs' claim of constructive discharge.
Plaintiffs have failed to come forth with admissible facts that
could tend to show unendurable working conditions.  Nor have
Plaintiffs even alleged in their Complaint, much less established
by admissible evidence, that they have left their employment;
indeed the Complaint alleges in ¶ 17 that "Plaintiffs are
currently affiliated with Defendants' 'South Jersey 3V Agency' in
Marlton, New Jersey."  No case has been found supporting a claim

for constructive discharge where plaintiff in fact remains employed.  Plaintiffs' Rule 56(f) affidavit fails to show how the information they seek, if uncovered, would present a genuine issue for trial that would preclude summary judgment on this constructive discharge claim.  The facts regarding employment restrictions are equally available to Plaintiffs, who have come forward with no facts contradicting the Kelleher Affidavit concerning constructive discharge.  For example, Plaintiffs' allegation that their commute became intolerable is factually undermined by the evidence from Kelleher that they are permitted by contract and by practice to work from essentially any location of their own choosing.  Plaintiffs have not sworn to the contrary nor have they indicated how additional discovery would enable them to do so.  A grant of summary judgment to the Defendants is therefore proper on Plaintiffs' constructive discharge claim (Count Three).

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment will be denied without prejudice as to Count One, and granted as to Counts Two through Seven.  Plaintiffs' motion for a continuance pursuant to Rule 56(f) will be granted as to Count

One, and denied as to Counts Two through Seven.  The accompanying

Order is entered.


**September 28, 2007**                    **s/ Jerome B. Simandle**
Date                                       JEROME B. SIMANDLE
                                           United States District Judge