THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| C. DONALD WHEATLEY and FREDERICK G. LEVIN, | HON. JEROME B. SIMANDLE |
| Plaintiffs, | |
| v. | Civil No. 06-5228 (JBS-KMW) |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, et al., | |
| Defendants. | |
| | |
| RON GOLDBERG, ET AL., | |
| Plaintiffs, | |
| v. | Civil No. 08-4294 (JBS-KMW) |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, et al., | |
| Defendants. | **MEMORANDUM OPINION** |

**SIMANDLE**, District Judge:

This matter is before the Court upon Defendants'
consolidated motion for summary judgment [Docket Item 47 in Civil
No. 06-5228].[1]  THIS COURT FINDS AS FOLLOWS:

1.  These two actions were consolidated for discovery
purposes, and a consolidated motion for summary judgement was

_____

[1]  The motion was not entered on the docket of Civil Action
No. 08-4294 and should be retroactively added there.

filed by Defendants addressing the similar contract claims made in both complaints and the constructive discharge claim made in the Goldberg Complaint.

2.  Plaintiffs were Field Representatives (FR) — a kind of sales associate — for Defendants Guardian Life Insurance Company of America and the Guardian Insurance & Annuity Company, Inc. Plaintiffs claim that their employment contract with Defendants provided that they could choose the office to which they were assigned, and Defendants breached the contract by requiring them to work at a particular office.  The relevant provision of the contract reads:

> The Field Representative shall be free to exercise his judgment as to the time and place of solicitation within the territory of persons acceptable to the Company, and as to the general conduct of his business, but he shall comply with and be bound by the rules of the Company now in force or as they hereafter may be amended or supplemented; such rules, however, are not to interfere with such freedom of action of the Field Representative.

(Wheatley Compl., Ex-A.)

3.  Defendants' position is that this paragraph simply has nothing to do with which office an FR is assigned.  Instead, they understand the provision to discuss how and where an FR solicits business within his territory.

4.  In a prior opinion on summary judgment in Wheatley dismissing all claims except this contract claim, this Court found the language in the relevant provision to be ambiguous as

to the meaning of "freedom of action."  Wheatley v. Guardian Life
Ins. Co. of America, Civil Action No. 06-5228, 2007 WL 2893383
(D.N.J. Sept. 28, 2007).  This Court allowed Plaintiffs to take
discovery relating to industry customs and practices that might
confirm Plaintiffs' reading of the disputed provision, so that
Plaintiffs might meet their burden of proving that Defendants
violated the contract.  Id. at *6.  In fact, the Court permitted
such discovery relevant to this contract claim in each of the
subject areas identified by Plaintiffs in their Rule 56(f)
affidavit opposing summary judgment.  Id.  The present motion is
Defendants' renewed motion upon the completion of that discovery.

     5.  The extrinsic evidence adduced by Plaintiffs does not
resolve the interpretation of the ambiguous provision in their
favor.  As recognized by this Court's prior opinion in this case,
in order for industry custom to be relevant under New York law,[2]
it must be "so well settled, so uniformly acted upon, and so long
continued as to raise a fair presumption that it was known to
both contracting parties and that they contracted in reference
thereto."  Reuters Ltd. v. Dow Jones Telerate, Inc., 662 N.Y.S.
2d 450, 454 (N.Y. App. Div. 1997).  The Court doubts that the
evidence presented demonstrates such a uniform custom, but need
not reach that question because under New York law a presumption

---

     [2]  The Court previously found that the contract's choice-of-
law provision means that New York law governs the contract claim
in this dispute.

about the parties' intentions is not raised when the evidence

makes clear that the custom was not "known to both contracting

parties and that they contracted in reference thereto." Id.;

British Intern. Ins. Co. Ltd. v. Seguros La Republica, S.A., 342

F.3d 78, 84 (2d Cir. 2003). Plaintiffs do not present evidence

that they were aware of any industry custom relating to the

assignment of FRs; on the contrary, all except Plaintiff Levin

affirmatively state that they were not aware of any such custom

or practice. (Wheatley Dep. 34:6-37:15; Goldberg Dep. 36:5-21;

Wilderman Dep. 14:20-17:12; Boianelli Dep. 15:24-16:6.) Levin

states that he did not have occasion to consider what happened

when the office to which an FR was assigned was terminated,

(Levin Dep. 26:2-4), and that he had not had any discussion prior

to signing the agreement about Defendants' usual practice in such

situations (Id. at 25:13-32:13.) Any presumption about the

parties' intent that could theoretically be supported by

reference to industry custom is negated by Plaintiffs' statements

relating to their own lack of such understanding of custom. No

other extrinsic evidence has been proffered from which one could

reasonably conclude that the phrase "such freedom of action" with

respect to solicitation of clients meant that the FR had the

right to choose an agency for affiliation within the territory.

     6.  In the absence of relevant extrinsic evidence,

Plaintiffs cannot carry their burden of proving that the

ambiguous contract language entitles them to relief.  Defendant

is therefore entitled to judgment as a matter of law on the

contract claim.

7.   Plaintiffs in Goldberg assert a claim of constructive

discharge in addition to the contract claim discussed above.

They make the claim without any reference to statutory or

contractual language, apparently believing that the cause of

action sounds in tort.  (Pl.'s Sur-reply Opp. Summ J., at 7.)

They argue that either Pennsylvania or New York law applies.

(Id.)

8.   Pennsylvania law does not permit the constructive

discharge tort on the type of actions taken here.  Because

Pennsylvania is an at-will employment state, constructive

discharge is available as a tort action only when the plaintiff

proves that the discharge would "threaten clear mandates of

public policy."   Kroen v. Bedway Security Agency, Inc., 633 A.2d

628, 632 (Pa. Super. Ct. 1993).  Such a showing requires that

"the employee point to a clear public policy articulated in the

constitution, in legislation, an administrative regulation, or a

judicial decision."   McDaniel v. American Red Cross, Johnstown

Region, 58 F. Supp. 2d 628 (W.D. Pa. 1999) (quoting Hunger v.

Grand Cent. Sanitation, 670 A.2d 173, 175 (Pa. Super. Ct. 1996)).

Plaintiffs have made no attempt to do so here.

9.   New York does not recognize a tort for wrongful

discharge.  <u>Lobosco V. New York Telephone Company/NYNEX</u>, 751

N.E.2d 462 (N.Y. 2001) ("New York does not recognize the tort of

wrongful discharge, and there is no exception for firings that

violate public policy, such as a discharge for exposing an

employer's illegal activities.").

    10.  Because neither set of Plaintiffs has met its burden of

producing evidence that they are entitled to relief under the

contract, nor have the Plaintiffs in <u>Goldberg</u> alleged a

constructive discharge cause of action that is cognizable under

either New York or Pennsylvania law, Defendants' motion for

summary judgment will be granted in full.

    11.  The accompanying Order shall be entered.


**December 16, 2009**                    **s/ Jerome B. Simandle**
Date                            JEROME B. SIMANDLE
                                United States District Judge